IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TOI RICE,<br><br>                Plaintiff,<br><br>    v.<br><br>ESIS, INC.,<br><br>                Defendant. | 8:22CV146<br><br>MEMORANDUM<br>AND ORDER |

      This matter is before the Court on defendant ESIS, Inc.'s ("ESIS") Motion to Dismiss Proceedings and Compel Arbitration (Filing No. 8). Absent dismissal, ESIS alternatively requests the Court stay the action. For the reasons stated below, ESIS's motion is granted in part and denied in part. Its motion to compel is granted; its motion to dismiss is denied. This case is stayed pending arbitration.

**I.    BACKGROUND**

      Plaintiff Toi Rice's ("Rice") allegations are briefly summarized as follows. Rice, an African American female, began working for ACE American Insurance Company, also referred to as Chubb ("Chubb"), as a senior claims adjuster in February 2018.[1] She held this position until December 2021. Chubb and its subsidiaries and affiliates provide insurance policies and related services to customers throughout the United States.

      According to Rice, similarly situated white coworkers received higher pay than Rice for performing the same job duties. Accordingly, in March 2021, Rice filed a charge of

---

[1] Rice's complaint alleges she was employed by ESIS, Inc., the named defendant. As part of the present motion, ESIS presented evidence that Rice is a former Chubb employee and both ESIS and Chubb are subsidiaries of Chubb INA Holdings, Inc. The arbitration agreement at issue includes Chubb INA Holdings, Inc. and its subsidiaries and affiliates. Rice does not contest this assertion or present any evidence to the contrary.

discrimination with the Nebraska Equal Opportunity Commission ("NEOC"). Shortly thereafter, Rice claims her employer retaliated against her for filing the charge.

Relevant here, Rice was presented with an Employment Dispute Arbitration Policy (the "Agreement") when she received her employment offer. The Agreement was a term and condition of her employment with Chubb, and she signed the Agreement on February 6, 2018. The Agreement provides that any employment-related legal claims, including claims of discrimination and retaliation, be submitted to arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

Rather than initiating arbitration, Rice filed suit against ESIS claiming race-based employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866 ("Civil Rights Act"), 42 U.S.C. § 1981 *et seq.,* and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.*

## II. DISCUSSION

### A. Standard of Review

In deciding a motion to compel arbitration where the parties rely on matters outside the pleadings, the Court applies a standard akin to summary judgment. *See Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) ("The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure."); *accord Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). Therefore, the Court will "view[] the evidence in the light most favorable to the nonmoving party" and grant the motion if "'there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *DeLuna v. Mower County*, 936 F.3d 711, 716 (8th Cir. 2019) (quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010)).

### B. Applicability of Federal Arbitration Act

As noted above, the Agreement contains an arbitration provision that generally requires employment related matters to proceed to an arbitrator. ESIS therefore seeks an order compelling arbitration of the parties' dispute pursuant to the FAA.

Rice disputes the application of the FAA, arguing it is reverse preempted by state law through the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq*. The McCarran-Ferguson Act generally provides that states are authorized to regulate the insurance industry without the risk of federal preemption. *See Express Scripts, Inc. v. Wenzel,* 262 F.3d 829, 833 (8th Cir. 2001). Because Chubb is an insurance provider, Rice contends that the McCarran-Ferguson Act precludes the application of the FAA in this case, rendering the arbitration provision in the Agreement unenforceable.[2]

The McCarran-Ferguson Act allows states to regulate and tax the business of insurance free from barriers that federal statutes might inadvertently impose on insurance companies. *United States Dep't of Treasury v. Fabe,* 508 U.S. 491, 500 (1993). The Act was Congress's response to the Supreme Court's decision in *United States v. South-Eastern Underwriters Association,* 322 U.S. 533 (1944), which generally held that insurance companies were subject to federal regulation under the commerce clause. The McCarran-Ferguson Act's basic purpose is to dispel doubts about states' power to tax and regulate insurance companies, *see F.T.C. v. Travelers Health Ass'n,* 362 U.S. 293, 299, (1960), and to "protect state regulation primarily against *inadvertent* federal intrusion," *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25 (1996) (emphasis in original).

But the McCarran-Ferguson Act was not intended to give states authority to regulate all the activities of insurance companies. Rather, the intent was to allow states—as

---

[2]Relatedly, Rice incorrectly argues that the McCarran-Ferguson Act removes insurance companies from interstate commerce altogether, and thus the FAA does not apply. This reading is beyond the plain language of the statute and inconsistent with the Supreme Court's interpretation of the Act. *See generally SEC v. Nat'l Sec., Inc.,* 393 U.S. 453 (1969); *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999).

3

opposed to the federal government—to regulate the "business of insurance." *Nat'l Sec., Inc.*, 393 U.S. at 459. "Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply." *Id*. The fact that ESIS is an insurance *company* does not preclude the application of the federal law, as Rice suggests.

Moreover, as the Supreme Court has held, "when federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interference with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Humana Inc.,* 525 U.S. at 310. *Humana* clarified that three requirements must be met for the McCarran-Ferguson Act to apply. First, the federal law in question must not be specifically directed to insurance. Second, a particular state law or declared regulatory policy enacted for the purpose of regulating insurance must exist. Finally, the application of federal law must invalidate, impair, or supersede that state law. If all three of these requirements are met, then federal law is reverse preempted by the state insurance law. *Id.*

In certain circumstances, the McCarran-Ferguson Act may provide an exception to the general rule of arbitration under the FAA. Specifically, if the state has an anti-arbitration law enacted for the purpose of regulating the business of insurance, and if enforcing an arbitration clause pursuant to the FAA would invalidate, impair, or supersede that state law, the arbitration clause may be unenforceable. *See Standard Sec. Life Ins. Co. of N.Y. v. West*, 267 F.3d 821, 823 (8th Cir. 2001) (finding the FAA was reverse preempted under McCarran-Ferguson Act by the Missouri Arbitration Act which prohibited arbitration clauses in insurance contracts); *see also Citizens of Humanity, LLC v. Applied Underwriters Captive Risk Assurance Co.*, 909 N.W.2d 614, 625-26 (Neb. 2018) (discussing the interaction of the McCarran-Ferguson Act and the FAA).

However, here, Rice does not identify any particular state statute she contends would be superseded or invalidated by applying the FAA in these circumstances. The

4

Court declines to engage in a reverse preemption analysis under such circumstances.[3] *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002) (stating "the party seeking to avail itself of the [McCarran-Ferguson] Act must demonstrate application of the FAA would invalidate, impair, or supersede a particular state law that regulates the business of insurance."). As the McCarran-Ferguson Act does not automatically render the FAA inapplicable, and Rice has failed to identify a state law requiring that result, the Court finds the FAA applies to the current dispute.

### C. Validity and Scope of the Arbitration Agreement

The FAA provides "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).

In reviewing a petition to compel arbitration, the Court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC,* 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). The Court must grant a petition to compel arbitration "if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193,

---

[3]The Court notes that Neb. Rev. Stat. § 25-2602.01(f)(4) prohibits arbitration for "any agreement concerning or relating to an *insurance policy*." Rice does not contend this statute applies, presumably because the current arbitration agreement does not relate to an insurance policy. For the same reason, it is unlikely that Rice could identify a statute regulating the "business of insurance" that would reverse preempt the FAA in the present circumstances. *See Nat'l Sec., Inc.*, 393 U.S. at 460 (stating that state statutes aimed at regulating the "relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement" are encompassed within the "business of insurance" under the McCarran-Ferguson Act).

5

1198 (8th Cir. 2008). Whether a valid arbitration agreement exists is a question of state contract law.[4] *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).

Here, Rice challenges the validity of the Agreement. She argues there was unequal bargaining power between the parties when she signed the Agreement, rendering the Agreement unconscionable and void as a matter of law. Rice's argument is brief and conclusory. She presents no evidence and points to no specific factual allegations—either in the circumstances that existed at the time the agreement was executed or in the agreement itself—that would render it "manifestly unfair or inequitable." *See Myers v. Neb. Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006) (defining the term "unconscionable" under Nebraska law); *see also Hollins v. Debt Relief of Am.*, 479 F.Supp.2d 1099, 1106 (D. Neb. 2007) (noting unconscionability under Nebraska law is determined by considering all the surrounding circumstances). Instead, she appears to argue that arbitration agreements between employers and employees are *per se* unconscionable based on the respective positions and bargaining power of the parties.

This clearly is not the rule. *See EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561 (8th Cir. 2007) (holding an arbitration agreement between employee and employer was not unconscionable under Nebraska law); *see also* Neb. Rev. Stat. § 25-2602.01(c) (applying arbitration agreements between employers and employees); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power . . . is not a sufficient reasons to hold that arbitration agreements are never enforceable in the employment context."). To the extent Rice argues a contract of adhesion exists, such contracts are "not automatically unconscionable or void" under Nebraska law. *Woodmen*, 479 F.3d at 566 (citing *Kosmicki v. Nebraska*, 652 N.W.2d 883, 893 (Neb. 2002). Accordingly, the Court finds the Agreement is a "valid arbitration

---

[4]While not specifically addressed, the parties appear to agree that Nebraska law applies to this issue.

agreement" under Nebraska law. *Robinson*, 841 F.3d at 783 (quoting *Faber*, 367 F.3d at 1052).

Finally, the Agreement plainly encompasses the current dispute. Rice brings claims for employment discrimination and retaliation pursuant to Title VII, the Civil Rights Act, and NFEPA. The Agreement specifically covers all employment-related disagreements, including claims arising under those statutory regimes.

The parties entered into an enforceable arbitration agreement, and Rice's claims are within the scope of that agreement. As such, this matter must be submitted to arbitration. ESIS's motion to compel arbitration is granted.

### D. Motion to Stay Proceedings

ESIS also filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). But the FAA "generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011); *see also* 9 U.S.C. § 3 (noting a court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). Therefore, the Court will deny ESIS's motion to dismiss and grant the motion to stay proceedings pending arbitration.

For the foregoing reasons,

IT IS ORDERED:
1. Defendant ESIS, Inc.'s Motion to Dismiss Proceedings and Compel Arbitration (Filing No. 8) is granted in part and denied in part.
2. ESIS's motion to compel arbitration and request for stay are granted. The parties are directed to proceed to arbitration in accordance with the terms of their agreement.
3. This case is stayed pending arbitration.
4. The motion to dismiss the case pending arbitration is denied.
5. The parties shall file a joint status report regarding the progress of arbitration proceedings every ninety (90) days beginning November 1, 2022.

6. The Clerk of Court is directed to set an initial status-report deadline of November 1, 2022.

Dated this 4th day of August 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge